ORIGINAL

FILED
DISTRICT OF WYOMING
CHEYENNE

2000 NOV 20  PM 4: 35

CLERK
U.S. DISTRICT COURT

Brent R. Cohen
ROTHGERBER, JOHNSON & LYONS, LLP
2424 Pioneer Av.
Cheyenne, WY 82001
(307) 638-6262

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| MASTER PLAN, LTD., a California Limited Partnership, CATHY ELLIOT, FRED RIO, FRED AMESBURY, WILLIAM J. YOUNG, L & L INVESTMENTS, JEFF WANAMAKER and SUZANNE JOHNS, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD H. ALBRECHT and TOM H. CONNOLLY, Chapter 11 Trustee and Liquidating Trustee of the Bankruptcy Estate of Donald H. Albrecht, <br><br> Defendants. | Civil Action No. __00CV__ 2198 |

## COMPLAINT

Plaintiffs, Master Plan, Ltd., Cathy Elliot, Fred Rio, Fred Amesbury, William J. Young,

L&L Investments, Jeff Wanamaker and Suzanne Johns, by and through their undersigned

attorneys, hereby state and allege as follows:

Receipt # 293322
Summons:__X__ issued
_____not issued

## PARTIES

1.     Plaintiff Master Plan, Ltd. ("Master Plan") is a California limited partnership with its principal place of business in Los Angeles County, California.

2.     Plaintiff William J. Young ("Young") is named as a general partner in the Master Plan partnership agreement.  Young is also a limited partner of Master Plan.

3.     Plaintiffs Cathy Elliot, Fred Rio, Fred Amesbury, L & L Investments, William J. Young and Jeff Wanamaker are limited partners of Master Plan.  Suzanne Johns is the survivor and successor in interest of Robert Johns and holds all interest in Master Plan of Robert and Suzanne Johns.  Suzanne Johns claims her proportionate interest as a Master Plan limited partner. The foregoing parties are collectively referred to herein as the "Limited Partners."

4.     There were other limited partners of Master Plan, but all current limited partners are named herein.

5.     Defendant Donald H. Albrecht is the other general partner named in the Master Plan partnership agreement.  Albrecht filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 101 et. seq.) in the United States Bankruptcy Court for the Central District of California on July 16, 1996.  Albrecht's case was thereafter transferred to the United States Bankruptcy Court for the District of Wyoming as case no. 97-20252.  Albrecht received a discharge in the Chapter 11 bankruptcy proceeding pursuant to 11 U.S.C. § 1141(d). Consequently, he is named in this proceeding only in his capacity as a general partner of Master Plan.  Plaintiffs seek no legal or equitable relief against Albrecht with respect to any debt that arose prior to the filing of Albrecht's Chapter 11 bankruptcy petition.

6.    Defendant Tom H. Connolly ("Connolly") was appointed as Chapter 11 Trustee of Albrecht's bankruptcy proceeding in May of 1997 pursuant to the Bankruptcy Code, 11 U.S.C. § 1104. In that capacity, Connolly filed and obtained confirmation of the Trustee's Second Amended Chapter 11 Plan of Liquidation ("Plan"). Under the terms of the Plan, a Liquidating Trust was created for purposes of reducing the assets of the bankruptcy estate to cash and making distributions to Albrecht's creditors. Connolly is the Liquidating Trustee of the Liquidating Trust.

## JURISDICTION AND VENUE

7.    With the exception of Suzanne Johns, the Plaintiffs' claims were timely filed in Albrecht's bankruptcy proceeding as Proofs of Claim pursuant to the Bankruptcy Code, 11 U.S.C. § 501. Suzanne Johns did not receive notice of Albrecht's bankruptcy proceeding and did not have the opportunity to timely file a proof of claim. The Bankruptcy Court denied her motion seeking leave to file an untimely claim. Suzanne Johns has appealed that decision.

8.    Connolly objected to the Proofs of Claim in Albrecht's bankruptcy proceeding and sought summary judgment.

9.    By its Order on Motion for Summary Judgment and of Abstention ("Abstention Order"), filed on November 9, 1999, the Bankruptcy Court denied summary judgment, but *sua sponte* ruled that it did not have jurisdiction to compel an accounting, dissolution and winding up of Master Plan and ruled that those claims should be tried in another forum. In addition, the Bankruptcy Court abstained from further determining the issues raised herein. The Abstention Order provides:

> Mandatory abstention may not be required here. Even though the
> United States District Court would not have jurisdiction over these

> claims absent the bankruptcy, no action is pending elsewhere and no motion to abstain is filed.
>
> Nevertheless, the Court concludes ... good reasons exist for such abstention. The equitable and legal claims are integrally intertwined. All of the issues raised require application of California law. ...
>
> The Court will abstain from hearing the litigation ... in deference to California law. For obvious reasons, the claims for money damages cannot be dismissed.

The Abstention Order further directs the Plaintiffs to establish the amount of their claims elsewhere, at which point they can be asserted against the Liquidating Trust in Albrecht's bankruptcy proceeding.

10.    Subsequent to entry of the Abstention Order, Plaintiffs, other than Suzanne Johns, brought a motion seeking relief from the automatic stay imposed under the Bankruptcy Code, 11 U.S.C. § 362, to enable Plaintiffs to liquidate the causes of action alleged herein. Said motion was granted and the stay was lifted.

11.    The United States Bankruptcy Court for the District of Wyoming continues to exercise jurisdiction over Albrecht's bankruptcy case and over Connolly in his capacity as the Liquidating Trustee of the Liquidating Trust. Pursuant to the Abstention Order, the purpose of this action is to establish the amount owed the Plaintiffs so that their claims can be allowed and paid from the Liquidating Trust pursuant to the Plan.

12.    This Court has subject matter jurisdiction of the claims made herein pursuant to 28 U.S.C. §§ 157 and 1334 to the extent they arise under the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, or arise in or relate to a case under the Bankruptcy Code.

L:\D\WP\F7\78513\Master Plan Pleadings\Wyoming Complaint.wpd        -4-

13.     Venue is appropriate in the District of Wyoming pursuant to 11 U.S.C. § 1409(a) by virtue of the fact that the Albrecht's Chapter 11 bankruptcy proceeding is pending in the United States Bankruptcy Court for the District of Wyoming.

## GENERAL ALLEGATIONS

14.     At some point in 1980, Albrecht approached various potential investors, including the Limited Partners, for purposes of soliciting their investment in Master Plan.

15.     In conjunction with that solicitation, Albrecht delivered to each potential investor a prospectus detailing Albrecht's plans with respect to certain parcels of property that were to be acquired by Master Plan. The objective, according to the prospectus, was to develop and sell the various parcels of property for purposes of achieving a significant gain on the investments made by the Limited Partners.

16.     These parcels of real estate included the Feuz Ranch, located in Teton County, Wyoming, and Rancho del Bresa, located near San Diego, California. With respect to the Feuz Ranch property, it was represented that approximately 100 homesites would be developed and sold between 1981 and 1986. Upon completion of this project, over $5.8 million in excess of debt and development costs was to be achieved. The Rancho del Bresa property was projected by Albrecht to yield almost $2 million in gain from the sale of 48 lots.

17.     The Limited Partners each invested in Master Plan in reliance on representations made by Albrecht.

18.     The persons named as general partners of Master Plan in the Master Plan partnership agreement are Albrecht, who is the controlling general partner, and Young.

19.     According to the partnership agreement, Albrecht was granted authority to exercise control of Master Plan and take actions on behalf of Master Plan without Young's consent or approval.  As provided in the partnership agreement, Albrecht could, and did, take actions on behalf of Master Plan without Young's approval, but Young could not take such actions without Albrecht's approval.  Because of that fact, Albrecht exercised control and dominion over partnership assets even though Young is a named general partner.

20.     Master Plan turned out to be a complete sham.  It is now known that the values for the property acquired with the Limited Partners' money had been grossly inflated in the prospectus.  Albrecht was aware that the figures he provided to potential investors were completely without support.

21.     Acting in his capacity as general partner of Master Plan, Albrecht caused Master Plan to sell assets without fair consideration, diverted monies from Master Plan to his own benefit and to the benefit of affiliated entities controlled by him, and converted assets of Master Plan to his own benefit and to the benefit of affiliated entities controlled by him.

22.     The Limited Partners were never advised that partnership funds were being used to operate a horse-racing operation on the Rancho del Bresa property.  Nor were they advised that "management fees" and "damage claims" were diverted from Master Plan to Albrecht.  Specifically, in his capacity as the managing partner of Master Plan, Albrecht diverted funds and breached his fiduciary duties owing to Master Plan and the Limited Partners with respect to Rancho del Bresa, as follows:

a.      Albrecht owes $100,951 to Master Plan, according to its capital accounts as of December 31, 1989.

b.      Albrecht allocated to himself approximately $200,000 for alleged "management fees" during the years 1986 and 1987, although there was nothing to manage.

c.      Without knowledge of the Limited Partners, Albrecht conducted a horse breeding and boarding operation, principally for the purpose of providing employment for his father.  Albrecht expressly represented that the horse breeding operation, in existence when Master Plan was formed, would not be an activity involving Master Plan.  Albrecht nonetheless continued the operation, which always lost money, and then attributed its losses to Master Plan. As a result, Master Plan was charged for losses in an amount no less than $645,531.

d.      Albrecht converted $385,000 in proceeds received from refinancing of the Rancho del Bresa property which proceeds were awarded to Master Plan in a contractual dispute related to the refinancing transaction.

e.      Albrecht converted $400,000 in proceeds received from a settlement of a lawsuit involving Master Plan's claims against a buyer of the Rancho del Bresa property.

23.     As of 1988, the Feuz Ranch property had still not been developed.  Without advising the limited partners, Albrecht caused Master Plan to transfer the Feuz Ranch property from Master Plan to Buffalo Valley Associates, Ltd., a limited partnership owned exclusively by Albrecht and his wife.  Albrecht then obtained a loan for $3.5 million from Watt Industries, putting the Feuz Ranch property up as collateral.  Albrecht kept the $3.5 million of proceeds from the Watt Industries loan for himself.  He then allowed the Feuz Ranch property to go into

foreclosure. In effect, Albrecht sold the Feuz Ranch property to Watt Industries for $3.5 million, diverting the cash proceeds to himself. Albrecht never advised the Limited Partners of these transactions.

24. The total owed by Albrecht to Master Plan as to the above transactions is not less than the aggregate of the Plaintiffs' Proofs of Claim, which total $11,820,672, as of July 16, 1996.

25. Plaintiffs are informed and believe, and allege, that there are other transactions which have occurred which increase the sum of damages to which they are entitled. The true nature and extent of such damages can only be ascertained through an accounting of all financial transactions involving Master Plan for the period in which Albrecht acted as general partner.

26. Albrecht conducted transactions for his benefit, and to the detriment of Plaintiffs, which conduct was concealed from the Limited Partners except for Plaintiff Young.

27. Plaintiff Young raised the issue of Albrecht's misconduct with Albrecht and received from Albrecht a commitment to make the partnership whole before the termination date of the partnership, which is in 2001.

28. Young relied on Albrecht's assurances and believed that Albrecht would properly compensate the Limited Partners upon dissolution of Master Plan in 2001, if not earlier upon exchange of the Feuz Ranch property with a governmental agency. The filing of the bankruptcy petition put Albrecht in breach of the agreement with Young and Master Plan as he no longer had the ability to perform the obligations in 2001, or at any time, as all of his assets are now under the control of Connolly.

29. The Limited Partners, except for Young, never knew of such matters, as the same were concealed from them, and their consent to the arrangements concerning the Feuz Ranch and Rancho del Bresa properties was never obtained.

30. As recently as February of 1996, Albrecht assured Amesbury, a Master Plan limited partner, that Master Plan was a viable entity with substantial and valuable assets and that Albrecht was in the process of preparing an accounting to the Master Plan partners. These statements were made to induce plaintiff Fred Amesbury to pay Albrecht a portion of the money Amesbury owed to obtain his Master Plan limited partnership interest. In reliance on said statements, Amesbury did make a payment to Albrecht in early 1996. Albrecht filed for bankruptcy several months later. He never submitted the promised accounting.

31. Plaintiffs have performed all conditions, covenants and promises required of them to be performed in accordance with the conditions of the Master Plan partnership agreement.

32. By the terms of the Master Plan partnership agreement, Master Plan would have continued until January 31, 2001 except for Albrecht's conduct. The misconduct of Albrecht described above warrants dissolution of the partnership under California law. Young, the other general partner on July 16, 1996, is authorized by ¶ 14.3 of the Master Plan partnership agreement to wind up the affairs of Master Plan, which he has attempted to do by filing a Proof of Claim on Master Plan's behalf, as above alleged.

33. As a result of the filing of his bankruptcy petition on July 16, 1996, pursuant to the Master Plan partnership agreement ¶¶ 14.2.2 and 14.3, Master Plan's dissolution was commenced.

34.    The running of the applicable statute of limitations for bringing the claims alleged herein was suspended as a result of the filing of Albrecht's bankruptcy petition on July 16, 1997, in addition to Connolly's continuous absence from the State of California at all times since his appointment as Chapter 11 Trustee.  Moreover, this action was preceded by an action stating virtually the same claims in the Superior Court of the State of California for the County of Los Angeles, case no. BC224370, filed on February 4, 2000.  During the pendency of that action, the running of any applicable statute of limitations was suspended.

## FIRST CAUSE OF ACTION
(Breach of Fiduciary Duty)

35.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 34 above.

36.    Albrecht, as the general partner of Master Plan, owed Plaintiffs fiduciary duties with respect to all transactions involving Master Plan.

37.    Albrecht breached his fiduciary duties through the actions and misconduct described above.

38.    As a proximate result of Albrecht's breach of fiduciary duties, Plaintiffs have suffered damages.

39.    Plaintiffs seek a determination of their damages reflected in their Proofs of Claim for purposes of establishing the amount of their allowed claims to be paid from the Liquidating Trust.  This includes a determination of the rights of the Limited Partners in any damages attributed to Master Plan.

## SECOND CAUSE OF ACTION
### (Fraud and Deceit)

40.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 39 above.

41.    By Albrecht's actions as set forth above, he intentionally made factual misrepresentations and concealed material facts from the Plaintiffs.

42.    The information Albrecht misrepresented and concealed was material.

43.    Albrecht misrepresented and concealed material factual information with the intent that the Plaintiffs rely or act in justifiable reliance thereon.

44.    Albrecht knew that by his deceptive words or conduct that he had created a false impression in the minds of the Plaintiffs and intended that the Plaintiffs take a course of action different from that if they had known the actual facts.

45.    Plaintiffs acted reasonably in relying on Albrecht's fraudulent misrepresentation and concealment of material facts in investing in Master Plan and allowing the continuation of partnership operations.

46.    Plaintiffs have been damaged as a proximate result of Albrecht's fraudulent misrepresentation and concealment of material facts.

47.    Plaintiffs seek a determination of their damages reflected in their Proofs of Claim for purposes of establishing the amount of their allowed claims to be paid from the Liquidating Trust. This includes a determination of the rights of the Limited Partners in any damages attributed to Master Plan.

### THIRD CAUSE OF ACTION
(Negligent Misrepresentation)

48.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 47 above.

49.    By Albrecht's actions as set forth above, he negligently made factual misrepresentations and concealed material facts from the Plaintiffs.

50.    The information Albrecht misrepresented and concealed was material.

51.    Albrecht misrepresented and concealed material factual information with the intent that the Plaintiffs rely or act in justifiable reliance thereon.

52.    Plaintiffs acted reasonably in relying on Albrecht's negligent misrepresentation and concealment of material facts in investing in Master Plan and allowing the continuation of partnership operations.

53.    Plaintiffs have been damaged as a proximate result of Albrecht's negligent misrepresentation and concealment of material facts.

54.    Plaintiffs seek a determination of their damages reflected in their Proofs of Claim for purposes of establishing the amount of their allowed claims to be paid from the Liquidating Trust.  This includes a determination of the rights of the Limited Partners in any damages attributed to Master Plan.

## FOURTH CAUSE OF ACTION
(Breach of Partnership Agreement)

55.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 54 above.

56.     Albrecht breached the express and implied provisions of the Master Plan partnership agreement by failing to perform his duties and make payments to Master Plan as agreed by him and, instead, by filing bankruptcy prior to the scheduled termination of Master Plan.

57.     Albrecht had until January of 2001, the scheduled termination date of Master Plan, to perform such acts.  When Albrecht filed bankruptcy, all of his assets became subject to the control of Connolly and subject to distribution in Albrecht's bankruptcy proceeding.

58.     As a proximate result of Albrecht's breach of the partnership agreement, Plaintiffs have suffered damages.

59.     Plaintiffs seek a determination of their damages reflected in their Proofs of Claim for purposes of establishing the amount of their allowed claims to be paid from the Liquidating Trust.  This includes a determination of the rights of the Limited Partners in any damages attributed to Master Plan.

## FIFTH CAUSE OF ACTION
(Rescission and Request for Return of Contribution)

60.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 59 above.

61.     The Limited Partners made substantial contributions to Master Plan and neither their partnership contribution, nor the net income of the partnership, has been distributed to them.

62.     The Limited Partners are entitled to rescind their payments to Master Plan as a result of Albrecht's misconduct.

63.     Plaintiffs seek a determination of their damages reflected in their Proofs of Claim for purposes of establishing the amount of their allowed claims to be paid from the Liquidating Trust.  This includes a determination of the rights of the Limited Partners in any damages attributed to Master Plan.

## SIXTH CAUSE OF ACTION
(Declaratory Relief)

64.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 63 above.

65.     An actual and existing controversy exists between Plaintiffs and Defendants. Plaintiffs contend that they are entitled to a determination of their damages for purposes of establishing the amount of their allowed claims to be paid from the Liquidating Trust.  Connolly, the Trustee of the Liquidating Trust, has objected to the Plaintiffs' Proofs of Claim in Albrecht's bankruptcy proceeding.

66.     In the Abstention Order, the Bankruptcy Court ruled, "for obvious reasons, the claims for money damages cannot be dismissed."  However, the Court exercised abstention.

67.     Connolly, as the Liquidating Trustee, is a necessary party to effectuate payment of the sums due to Plaintiffs.  Plaintiffs' Proofs of Claim remain on file in Albrecht's bankruptcy

proceeding, subject to the dollar amount to be adjudicated herein. The award of this Court will be used by Plaintiffs to establish allowed claims pursuant to the Plan.

68.    Plaintiffs seek a determination of their damages reflected in their Proofs of Claim for purposes of establishing the amount of their allowed claims to be paid from the Liquidating Trust. This includes a determination of the rights of the Limited Partners in any damages attributed to Master Plan.

### SEVENTH CLAIM FOR RELIEF
(Partnership Dissolution, Accounting and Winding Up)

69.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 68 above.

70.    As a result of the actions and misconduct of Albrecht, Master Plan has been dissolved.

71.    Plaintiffs are entitled to a decree of dissolution, along with an order requiring an accounting of all financial transactions of Master Plan and the winding up of its affairs for purposes of establishing the amount of their allowed claims to be paid from the Liquidating Trust.

WHEREFORE, Plaintiffs pray for judgment as follows:

A.    For a determination of the amount to which Plaintiffs are entitled to claim against the Liquidating Trust on the basis of the Proofs of Claim filed in Albrecht's bankruptcy proceeding on their First, Second, Third, Fourth, Fifth and Sixth Claims for Relief, including a determination of the rights of the Limited Partners in any damages attributed to Master Plan;

L:\D\WP\F7\78513\Master Plan Pleadings\Wyoming Complaint.wpd      -15-

B.    For a decree of dissolution, along with an order requiring an accounting and

winding up of Master Plan on their Seventh Claim for Relief; and

C.    For such other and further relief as is appropriate.


Dated this 20th day of November, 2000


ROTHGERBER JOHNSON & LYONS LLP


Brent R. Cohen, No. 5-2485
2424 Pioneer Avenue, Suite 210
Cheyenne, WY 82001
Tel:    (307) 638-6262
Fax:    (307) 638-6565

Andrea L. Richard, No. 5-2848
2424 Pioneer Avenue, Suite 210
Cheyenne, WY 82001
Tel:    (307) 638-6262
Fax:    (307) 638-6565

Attorneys for Plaintiffs